IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| JOYCE SHUPE,<br><br>    Plaintiff,<br><br>vs.<br><br>TRANSAMERICA LIFE INSURANCE COMPANY,<br><br>    Defendant. | No. 19-CV-0045-LRR-KEM<br><br>**ORDER** |

_____

Defendant Transamerica Life Insurance Company moves to stay all discovery and proceedings in this case pending resolution of a potential national class certification in *Gail Thompson et al. v. Transamerica Life Insurance Co.*, No. 2:18-cv-05422-CAS-GJS (C.D. Cal.).[1]  Doc. 7.  Plaintiffs in *Thompson* filed an amicus brief in support of the motion to stay (Doc. 24), and Plaintiff Joyce Shupe filed a resistance to the requested stay (Doc. 25).  Both Transamerica and the *Thompson* Plaintiffs filed replies to Shupe's resistance.  Docs. 26, 27.  For the reasons below, I find the motion to stay should be **granted**.

## I.    BACKGROUND

On June 18, 2018, Gail Thompson and Lois Thompson filed a complaint in the Central District of California, alleging a class action on behalf of owners of Transamerica universal life policies.  Cal. Doc. 1.  Specifically, the class action was brought on behalf of the Thompsons "and all similarly situated owners of Transamerica ***TransUltra 115***

---

[1] "CA Doc." refers to the docket number of filings in *Thompson*, No. 2:18-cv-05422-CAS-GJSx (C.D. Cal.).

and TransSurvivor 115 universal life policies (collectively, the 'Policies')." *Id.* at 2 (emphasis added). Both the TransUltra and TransSurvivor policies have flexible premiums, but TransUltra is a single life universal policy, while TransSurvivor is a joint life universal policy.[2] *Id.* at 10. Lois Thompson held a TransSurvivor policy (but not a TransUltra policy). The Thompsons' complaint included claims for breach of contract and declaratory relief on behalf of a proposed national class, based on rate increases that began in August 2017. *Id.* at 15, 35, 42. The proposed national class consisted of:

> All persons who own or owned a Policy [defined as TransUltra or TransSurvivor policies] which was subjected to a Monthly Deduction increase imposed by Transamerica beginning July 1, 2017.

*Id.* at 31. The complaint also stated "thousands of Class Members" faced the choice of paying the higher rates or forgoing their insurance benefits, and "Plaintiffs therefore seek immediate preliminary injunctive and equitable relief" to stop Transamerica from charging and collecting the higher rates. *Id.* at 31, 36, 44.

On December 26, 2018, the court in the Central District of California denied the portions of Transamerica's motion to dismiss alleging (1) lack of standing for claims based on TransUltra policies, and (2) lack of personal jurisdiction over putative class members who were not California citizens. Cal. Doc. 82 at 7-11; *see also Thompson v. Transamerica Life Ins. Co.*, No. 2:18-cv-05422-CAS-GJSx, 2018 WL 6790561, at *4-6 (C.D. Cal. Dec. 26, 2018). On May 8, 2019, the Thompsons filed an amended complaint, which, in relevant part: (1) added two named plaintiffs who owned TransUltra policies; and (2) redefined the national class as persons who own(ed) a TransUltra or TransSurvivor policy that was subjected to the TransUltra or the TransSurvivor monthly deduction rate increases that began in August 2017. Cal. Doc. 91 at 6, 35. The amended complaint includes the original claims of breach of contract and declaratory relief and a

---

[2] For ease of reading, TransUltra 115 policies are referred to as TransUltra and TransSurvivor 115 policies are referred to as TransSurvivor.

2

request for injunctive relief. *Id.* at 39-40, 46, 48. Deadlines have been set in the *Thompson* case, including completion of fact discovery by December 31, 2019, and motions for class certification by August 13, 2019. Cal. Doc. 96. It also appears a significant amount of discovery and work has been completed and is ongoing in the case. Doc. 24 at 8-9.

On April 18, 2019, Shupe filed her complaint in this court, bringing claims based on Transamerica's 2017 monthly deduction rate increases for TransUltra policies. Doc. 1. Shupe brings the action on behalf of herself and a proposed class "consisting of all TransUltra 115 policyholders who have been subjected to Transamerica's monthly deduction rate increases since 2017." Doc. 1 at 31. Shupe brings claims for breach of contract and breach of the implied covenant of good faith and fair dealing, and she seeks injunctive and declaratory relief. *Id.* at 34-38. Transamerica filed the pending motion to stay on May 30, 2019. Doc. 7. Shupe filed motions for expedited discovery (Doc. 8), for preliminary injunction (Doc. 9), and for class certification (Doc. 10) on May 31, 2019. Shupe's expedited discovery motion seeks written discovery and a deposition for information relevant to her motions for preliminary injunction and class certification. Doc. 8. No deadlines or trial date have been scheduled in the case, pending ruling on the motion to stay.

Transamerica and the *Thompson* plaintiffs seek to stay this case, arguing that it is duplicative to *Thompson*, that deference should be given to *Thompson* as the first-filed action, that the requested stay would be the most efficient use of resources, and that the requested stay will not prejudice Shupe. The *Thompson* plaintiffs also argue allowing this case to proceed may prejudice the *Thompson* plaintiffs. In resisting the stay, Shupe argues that a stay would cause her undue prejudice and would not be more efficient; that if applicable, Shupe's action was the first-filed; and that the court in *Thompson* lacks jurisdiction over Shupe and her claims.

3

## II. LEGAL FRAMEWORK

The Eighth Circuit recognizes the "first-filed rule," which provides that when two federal courts have duplicative cases, the court where the first action was filed should generally decide the case. *Martin v. Cargill, Inc.*, 295 F.R.D. 380, 388 (D. Minn. 2013). This rule promotes the efficient use of judicial resources when the latter filed case is stayed or dismissed in favor the first-filed case. *Id.*

> One of the most troubling problems in the modern class-action arena is the filing of multiple, competing class actions in state and federal courts all directed toward the same conduct or activities, which are alleged to have caused harm that is multistate, if not national, in scope. Clearly, a single nationwide class action seems to be the best means of achieving judicial economy. In its absence, these competing and duplicative actions not only generate unnecessary litigation and duplicative fees, but also they may result in delay, pose complicated problems of judicial coordination in some instances, increase the risk of disparate verdicts raising serious questions of fairness, and, in situations in which there are limited funds available as compensation, result in the unequal distribution of those funds.

*Id.* at 389 (quoting 7B Wright & Miller, *Federal Practice & Procedure* § 1798.1 (3d ed. 2005)).

"Proceedings are duplicative if the issues in one case 'substantially duplicate those raised by a case pending in another court.'" *Ritchie Capital Mgmt., L.L.C. v. BMO Harris Bank, NA*, 868 F.3d 661, 664 (8th Cir. 2017) (quoting *Ritchie Capital Mgmt., L.L.C. v. Jeffries*, 653 F.3d 755, 763 n.3 (8th Cir. 2011)). The relevant factors in determining whether to apply the first-filed rule include preserving judicial resources and comprehensive resolution of the claims. *Id.* at 664. "The first-filed rule 'is not intended to be rigid, mechanical, or inflexible, but is to be applied in a manner best serving the interests of justice. . . . [T]he prevailing standard is that in the absence of compelling circumstances, the first-filed rule should apply.'" *Martin*, 295 F.R.D. at 388 (citations omitted) (quoting *Nw. Airlines, Inc. v. Am. Airlines, Inc.*, 989 F.2d 1002, 1005 (8th Cir. 1993)). The Eighth Circuit has recognized two factors that favor disregarding preference

4

for the first-filed action: (1) whether plaintiff in the first case was on notice that the second would soon be filed and then filed the first case in a different venue, and (2) whether the first case sought declaratory relief while the second case sought damages or equitable relief. *Nw Airlines*, 989 F.2d at 1007.

### III. DISCUSSION

Both parties recognize that this court has broad discretion in determining whether to grant a motion to stay. *See* Doc. 7-1 at 10; Doc. 25 at 13; *see also Clinton v. Jones*, 520 U.S. 681, 706 (1997); *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936); *Nw. Airlines*, 989 F.2d at 1004 (noting a court's discretionary power to enjoin parties under the first-filed rule is "firmly established"). It appears, for purposes of the first-filed rule, that Shupe's case is duplicative of the *Thompson* case. From the face of the complaints, these cases are substantially similar: (1) the putative national class in *Thompson* encompasses Shupe and her defined TransUltra class; (2) both cases involve facts surrounding Transamerica's 2017 monthly deduction rate increases for TransUltra policies (as well as TransSurvivor policies in *Thompson*); and (3) the cases involve essentially the same claims and requested relief. The initial *Thompson* complaint did not have a named plaintiff who owned a TransUltra policy, but the defined national class clearly included owners of both TransSurvivor and TransUltra policies. Cal. Doc. 1 at 2, 31. The amended complaint in *Thompson* not only defines a national class that includes Shupe and other TransUltra policy holders, but adds named plaintiffs who owned TransUltra policies. It appears the amended complaint in *Thompson* was a response to the court's ruling on Transamerica's motion to dismiss (*see* Doc. 24 at 6) and was a predictable eventuality because the defined class in the original *Thompson* complaint included TransUltra policy holders.

The recognized exceptions to the first-filed rule do not apply here. Although Shupe's complaint was filed prior to the amended complaint in *Thompson* (both of which

5

include named TransUltra policy holders), it came after the original *Thompson* complaint and mirrors that complaint for claims of TransUltra policy holders. As noted above, the circumstances here do not support a finding that the amended complaint in *Thompson* was filed to beat Shupe to the courthouse door. If anything, it appears counsel for Shupe have attempted to avoid the predicable motion to stay now pending before this court: Shupe's complaint in relevant part mirrors the *Thompson* complaints and Shupe filed motions for preliminary injunction and class certification a mere 43 days after filing her complaint, and a day after Transamerica filed its motion to stay. Shupe's counsel likely anticipated the motion to stay, as counsel has been unsuccessful on numerous other occasions in proceeding with duplicative class-action suits. *See Fairlie v. Transamerica Life Ins. Co.*, No. 18-cv-32-LTS (N.D. Iowa) (Doc. 37), *McMahon v. Transamerica Life Ins. Co.*, No. 17-cv-00149-LTS (N.D. Iowa) (Doc. 48) (both granting motions to stay in favor of *Feller et al. v. Transamerica Life Ins. Co.*, 2:16-cv-01378-CAS-AJW (C.D. Cal.)); *see also Emerson v. Sentry Life Ins. Co.*, Nos. 18-cv-379-jdp, 18-cv-254-jdp, 2018 WL 4380988, at *1-3 (W.D. Wis. Sept. 14, 2018) (granting motion to stay cases as duplicative to a class action pending in the Middle District of Florida); *James v. LoanCare, LLC*, No. 2:15cv512, 2016 WL 10893949 (E.D. Va. Feb. 22, 2016) (finding first-filed rule prevented current action from proceeding simultaneously with action in the Southern District of Florida). Shupe does not dispute that the cases are duplicative; rather, she raises other arguments to deny the motion to stay.

Shupe argues that Transamerica bears the burden of showing a stay is appropriate, citing *CRST Expedited, Inc. v. Swift Transp. Co. of Ariz., LLC*, No. 17-CV-25-CJW, 2018 WL 3966961, at *3 (N.D. Iowa Aug. 17, 2018). *CRST* is distinguishable; it involved a motion to stay similar cases within the same court pending ruling on an appeal in one of the cases—not a motion to stay a case purportedly duplicative of another class action filed first and pending in a different district. *See Id*. at *2. Even if this standard applied, when determining whether to grant the stay, the court considered (1) whether

6

the stay would cause undue prejudice or provide a tactical advantage, (2) whether a stay would simplify issues before the court, and (3) the status of the case (whether discovery was completed and whether a trial date had been set). *Id*. at *8. Here, each of these factors favors granting the motion to stay.

Shupe's primary argument—that the court in *Thompson* has no jurisdiction over Shupe—lacks merit. In determining whether class actions are duplicative, "'*the class members* [and not the named plaintiffs] are the proper focus,'" because actions with different plaintiffs may be substantially duplicative if "they purport to act on behalf of overlapping, nationwide classes." *Martin*, 295 F.R.D. at 388 (quoting *Askin v. Quaker Oats Co.*, No. 11 CV 111, 2012 WL 517491, at *4 (N.D. Ill. Feb. 15, 2012) (noting "recent cases from this and other districts make clear that the class members are the proper focus of the [first-filed] inquiry")). Shupe's brief not only fails to acknowledge this legal authority, but counsel also fails to address the court's prior ruling in *Thompson* on this issue. *See Thompson*, 2018 WL 6790561, at *4-6; Cal. Doc. 82 at 7-11.[3] Shupe and the defined national class in her complaint are duplicative of the defined national class in both the original and amended complaints in *Thompson*.

Shupe argues staying her case would cause prejudice[4] because she has sought a preliminary injunction, unlike in the *Thompson* case. Shupe does not acknowledge that

---

[3] In addition to failing to acknowledge applicable authority and rulings, counsel in Shupe's brief color facts and cites legal authority that is easily distinguishable from the facts presented here.

[4] Any prejudice resulting from a ruling on the motion to stay would likely inure to the Thompson plaintiffs if the motion to stay were denied. *See* Doc. 24 at 11-13; *see also Wright v. Walden University, LLC*, 2017 WL 1435717 (D. Minn. 2017) (finding denial of a motion to dismiss duplicative actions "would risk binding class members to inconsistent judgments. *See Catanese v. Unilever*, 774 F. Supp. 2d 684, 688 (D.N.J. 2011) ('This Court cannot allow a parallel action to proceed which involves putative absent class members from an earlier-filed class action. Such a situation would cause substantial duplication of effort and, worse, potentially inconsistent rulings.'); *Fuller v. Abercrombie & Fitch Stores, Inc.*, 370 F. Supp. 2d 686, 690 (E.D. Tenn. 2005) ('[I]f both actions proceed, the same individuals could receive two opt-in notices for the

(Footnote continued . . .

the original and amended complaints in *Thompson* both seek injunctive relief (which relief is mirrored in Shupe's duplicative complaint). The plaintiffs in *Thompson* are currently working to negotiate interim injunctive relief and if unsuccessful in those efforts, may seek preliminary injunctive relief. Doc. 24 at 8, 13-14; Doc. 26 at 6. This would protect the interests of any TransUltra class member (if the class is certified), including Shupe. If the defined TransUltra class in *Thompson* is certified and Shupe chooses to opt out of the class, she could proceed individually in this case to seek relief, including a preliminary injunction.[5] Because proceedings in *Thompson* are further advanced, preserving judicial resources (and likely securing more efficient and timely relief for Shupe) will be achieved by staying this action in favor of the *Thompson* action.

Shupe makes other assertions, relying on *McDonald v. Piedmont Aviation, Inc.*, 625 F. Supp. 762 (S.D.N.Y. 1986), that a stay will not simplify the issues before this court because she is not a party in *Thompson* and because a class has not been certified in *Thompson*. The court in *McDonald* denied a requested stay because the competing cases raised different issues: one sought to enforce rights under the terms of a statute while the other focused on interpretive regulations that had not yet taken effect. *McDonald*, 625 F. Supp. at 767. Here, the relevant claims raised and relief sought by Shupe and the putative national class in *Thompson* are substantially similar. Resolution of the claims and related issues in *Thompson* would certainly be more efficient and expedient for both judicial resources and the parties. Consideration of the first-filed rule, as well as factors in considering a general motion to stay (not covered by the first-filed rule) favor a stay of Shupe's action in this court.

---

same claim but in different courts.'")).

[5] I note Shupe's complaint includes a claim for breach of the implied covenant of good faith and fair dealing (Doc. 1 at 35-37) while the *Thompson* complaint includes the same claim only for defined California classes (and not the national class) (Cal. Doc. 91 at 40-41). Shupe does not raise this issue in her resistance, and I do not find it supports denial of the motion to stay as Shupe could proceed with individual claims in this court if she chooses to do so.

8

## IV.  CONCLUSION

For the reasons discussed above, the court finds this case is duplicative of the *Thompson* case, and Defendant Transamerica Life Insurance Company's Motion to Stay (Doc. 7) is **granted**.

IT IS ORDERED this case (including all case deadlines, all motion deadlines, and all responsive pleading deadlines) is **stayed** pending resolution in *Thompson*.  Within 90 days of this order, the parties shall file in this case a status report on the status of *Thompson*, and shall also report to the court no later than 10 days following resolution of *Thompson*.

**IT IS SO ORDERED** this 19th day of July, 2019.

*[signature: Kelly K.E. Mahoney]*

Kelly K.E. Mahoney
Chief United States Magistrate Judge
Northern District of Iowa